729 A.2d 1084 (1999)
321 N.J. Super. 637
Wilma D'OLIVIERA, Plaintiff-Respondent,
v.
Diane J. MICOL and Theodore Jarusewski, Defendants-Respondents, and
John Dallas Patten and United Van Lines and/or Mohawk Moving and Storage, Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued May 25, 1999.
Decided June 8, 1999.
Gary M. Price, Metuchen, for defendants-appellants (Buttafuoco, Karpf & Arce, attorneys, Kearny; Mr. Price and Barry Lee Korsh, Passaic, on the brief).
Dean Anglin, Cranbury, for plaintiff-respondent D'Oliviera.
Randi S. Greenberg, Piscataway, for defendant-respondent Micol (Robert A. Auerbach, attorney, Murray Hill; Ms. Greenberg, of counsel and on the brief).
Judith A. Kopen, Clinton, for defendant-respondent Jarusewski (Gebhardt & Kiefer, attorneys; Robert C. Ward, on the brief).
Before Judges PRESSLER, BROCHIN and KLEINER.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
We dismiss this appeal as interlocutory.
This action arose out of a traffic accident on May 16, 1994. Defendant John Dallas Patten, an independent owner-operator, was driving his tractor-trailer, which he leased to defendants United Van Lines and *1085 Mohawk Moving and Storage, southbound on Route 206 en route from Little Ferry to Washington, D.C. As he approached a railroad overpass, the road changed from two lanes to one lane, requiring the two lanes of traffic to merge. Several cars merged in front of defendant's truck, somewhat obscuring the road surface. As he was driving towards the overpass at about fifteen miles an hour he saw, about ten or fifteen feet in front on him, a piece of angle iron lying in the roadway. Unable to avoid it, he drove over it, and heard it strike the underside of the vehicle. Believing that no damage to the truck had ensued, he continued driving although he could then have stopped safely. About a quarter of a mile beyond the overpass, Patten noticed in his rear-view mirror a strip of diesel fuel behind him. He then stopped and saw that the angle iron had torn a gash in his fuel tank. In the meantime, defendant Theodore Jarusewski, who had been driving at some distance behind the truck, hit the fuel spill and barely retained control of his vehicle, finally bringing it to a safe stop near a guardrail. Defendant Diane J. Micol, who was driving behind Jarusewski, also lost control of her vehicle when she hit the fuel spill. Unfortunately, she was unable to stop and struck the rear of Jarusewski's vehicle. Jarusewski's passenger, plaintiff Wilma D'Oliviera, was injured in that collision.
As the pleadings evolved, D'Oliviera sued Micol, Jarusewski, Patten and United Van Lines. Apparently at least some of these defendants also filed cross-claims against each other. Following discovery, Jarusewski's motion for summary judgment dismissing the complaint against him was granted. At the ensuing trial, the judge granted the motion of United Van Lines and Mohawk Moving and Storage, dismissing as to them because of plaintiff's failure to prove a prima facie case of negligence against them. At the conclusion of trial, the jury returned a no cause verdict in favor of Micol and Patten.
Plaintiff moved for a new trial, and on November 5, 1997, the judge entered an order granting a new trial as to Patten but not as to Micol. Patten then moved for an order recusing the trial judge as well as reconsideration of the new trial order. Both motions were denied. After denial of his motion for reconsideration, Patten filed a motion with this court for leave to appeal that portion of the trial court order requiring a new trial as to him. We denied that motion by order dated March 26, 1998. On March 27, 1998, Patten applied to the trial court for entry of an order pursuant to R. 4:42-2 certifying as final its order granting a new trial as to him but denying a new trial as to Micol. His application, which did not refer to his denied motion for leave to appeal, requested the finality certification "in the interests of justice and in order to save all parties the unnecessary expense and delay of a potential third trial in this matter...." We assume that the third trial he was referring to would be the new trial this court might order against Micol if we ultimately affirmed that part of the order granting a new trial as to Patten but reversed that part of the order denying a new trial as to Micol. The trial court granted the requested relief, certifying its order as final.
There is no question but that an order granting a new trial as to one or more parties is interlocutory since it does not dispose of all issues as to all parties. See, e.g., Olah v. Slobodian, 119 N.J. 119, 128-129, 574 A.2d 411 (1990); Fair Share Hous. Center v. Township of Cherry Hill, 242 N.J.Super. 76, 81, 576 A.2d 24 (App.Div.1990). It is consequently ordinarily appealable only by leave to appeal granted pursuant to R. 2:5-6, unless eligible for certification as final pursuant to R. 4:42-2 and so certified.
R. 4:42-2, as amended effective January 2, 1989, provides in relevant part as follows:
If an order would be subject to process to enforce a judgment pursuant to R. 4:59 if it were final and if the trial court certifies that there is no just reason for delay of such enforcement, the trial court may direct the entry of final

*1086 judgment upon fewer than all the claims as to all parties, but only in the following circumstances: (1) upon a complete adjudication of a separate claim; or (2) upon complete adjudication of all the rights and liabilities asserted in the litigation as to any party; or (3) where a partial summary judgment or other order for payment of part of a claim is awarded.
It is perfectly clear that pursuant to the rule, the only interlocutory orders that are eligible for a finality certification are those which are subject to enforcement by way of execution. Indeed the purpose of the original rule was to permit execution on a partial summary judgment fully adjudicating a separable claim for affirmative relief or all claims by and against a single party in multi-party litigation. The appealability of a certified interlocutory judgment under the rule is thus an ancillary consequence of finality certificationit was never the primary purpose or focus of finality certification. Accordingly, it is well-settled that the entire panoply of interlocutory orders not subject to execution, including summary judgments dismissing or declining to dismiss one of several defendants and motions granting a new trial, is not eligible for certification.
We have attempted over the years to make clear that certification of finality is designed to afford relief where there is no just cause for delay in execution of an interlocutory ordernot to reduce delay in appeal from the interlocutory order. Appeal from an interlocutory order is governed by R. 2:5-6, and it is the exclusive prerogative of this court to determine whether extraordinary circumstances are present warranting a piecemeal appeal. See, e.g., Fu v. Fu, 309 N.J.Super. 435, 439-440, 707 A.2d 473 (App.Div.), appeal granted, 155 N.J. 585, 715 A.2d 988 (1998); Hallowell v. American Honda Motor Co., 297 N.J.Super. 314, 318, 688 A.2d 110 (App.Div.1997); DeFelice v. Beall, 274 N.J.Super. 592, 595 n. 1, 644 A.2d 1136 (App.Div.), certif. denied 138 N.J. 268, 649 A.2d 1288 (1994); Kurzman v. Appicie, 273 N.J.Super. 189, 191-192, 641 A.2d 566 (App.Div.1994); Procanik v. Cillo, 226 N.J.Super. 132, 143, 543 A.2d 985 n. 4 (App.Div.), certif. denied, 113 N.J. 357, 550 A.2d 466 (1988); DiMarino v. Wishkin, 195 N.J.Super. 390, 395-396, 479 A.2d 444 (App.Div.1984). As we noted in Riley v. New Jersey Bell Tel. Co., 213 N.J.Super. 343, 346, 517 A.2d 468 (App.Div.1986):
In this case the very purpose of the certification was to subject our calendar to control by the trial court, a goal not contemplated by R. 4:42-2. While we recognize that the rule was amended January 1, 1986, even before that amendment it was clear that a certification so that a matter would be appealable immediately was improper. See Delbridge v. Jann Holding Company, 164 N.J.Super. 506, 510, 397 A.2d 356 (App.Div.1978).
The 1989 amendment of the rule has apparently had as little deterrent effect on the regrettably widespread practice of improvident certification as its earlier formulations despite its evident intention to clarify the limited circumstances in which certification is appropriate.
We have continued as well to express our reluctance to grant leave to appeal nunc pro tunc when an order has been improvidently certified. As we said in Riley, supra, 213 N.J.Super. at 347, 517 A.2d 468:
We are aware that in other cases in which interlocutory orders have been appealed as of right the court granted leave to appeal nunc pro tunc. Nevertheless we think that the time has come in the light of the numerous decisions condemning unauthorized interlocutory appeals to enforce the rules.
See also Hallowell, supra, 297 N.J.Super. at 318, 688 A.2d 110. We would certainly consider granting leave nunc pro tunc if there were an issue of public interest at stake, see, e.g., Jacob v. Norris, McLaughlin & Marcus, 247 N.J.Super. 266, 269-270, 588 A.2d 1287 (App.Div.1991), rev'd on other grounds, 128 N.J. 10, 607 A.2d 142 (1992). But that is not the case here. *1087 Nor do we deem it appropriate to grant leave to appeal nunc pro tunc for any other reason. We view this appeal as particularly egregious in view of our denial of defendant's motion for leave to appeal prior to his application for certification to the trial judge. We think it plain that the trial judge was not informed of that denial and that the certification procedure was thereafter resorted to by counsel for the sole purpose of obtaining relief from the trial court that it was not authorized to give and which we had already denied. This flagrant misuse by counsel of our rules of practice and procedure can hardly be rewarded by permitting him to achieve his objective.
The appeal is dismissed.