968 A.2d 180 (2009)
406 N.J. Super. 433
In the Matter of FAIR LAWN BOROUGH, BERGEN COUNTY, MOTION OF LANDMARK AT RADBURN Seeking Amendment or Dismissal of Fair Lawn's Third Round Fair Share Plan Petition.
No. A-1611-07T3
Superior Court of New Jersey, Appellate Division.
Argued Telephonically March 9, 2009.
Decided April 8, 2009.
*182 Richard A. Lustgarten, West Orange, argued the cause for appellant Fair Lawn Borough (Goodman & Lustgarten, attorneys; Mr. Lustgarten, on the brief).
Ronald L. Shimanowitz, argued the cause for respondents Landmark at Radburn, L.L.C. and Bergen Development Group, L.L.C. (Hutt & Shimanowitz, P.C., Woodbridge; Mr. Shimanowitz, of counsel and on the brief; Jonathan G. Burnham, on the brief).
George N. Cohen, Deputy Attorney General, argued the cause for respondent New Jersey Council on Affordable Housing (Anne Milgram, Attorney General, Attorney; Melissa H. Raksa, Deputy Attorney General, of counsel; Mr. Cohen, on the brief).
Before Judges REISNER, SAPP-PETERSON and ALVAREZ.
The opinion of the court was delivered by
REISNER, J.A.D.
Fair Lawn Borough (Fair Lawn or the Borough), challenges a final decision of the New Jersey Council on Affordable Housing (COAH) dismissing Fair Lawn's third round petition for substantive certification of its affordable housing plan. In affirming COAH's decision, we confirm the agency's authority to dismiss a municipality's third round petition, based on the municipality's persistent failure to comply with the terms of its second round certification. Further, where a municipality has not actually satisfied its previously-unmet need for affordable housing, COAH need not allow the municipality to remove from its plan a viable site that has been included for over a decade as part of its vacant land adjustment.

I
On November 7, 2007, COAH dismissed the petition because Fair Lawn had failed to adopt an overlay zoning ordinance,[1] which was needed to authorize the construction of affordable housing on the property of Landmark at Radburn, L.L.C., and Bergen Development Group, L.L.C. (collectively Landmark). The Landmark tract, which comprised the Heyward Site (block 3610, lot 1) and Daly Field (block 3610, lot 2), had been part of Fair Lawn's *183 COAH-approved second round affordable housing plan since 1996; COAH's approval resolution had ordered Fair Lawn to adopt the required overlay zoning within forty-five days of October 2, 1996.[2] Thus, Fair Lawn had obtained more than a decade of protection against a builder's remedy lawsuit, which Landmark could otherwise have pursued, by including the Landmark tract in its COAH-approved fair share plan. See Toll Bros., Inc. v. Twp. of W. Windsor, 173 N.J. 502, 511-14, 803 A.2d 53 (2002); Elon Assocs., L.L.C. v. Twp. of Howell, 370 N.J.Super. 475, 480-82, 851 A.2d 714 (App.Div.), certif. denied, 182 N.J. 149, 862 A.2d 57 (2004).
On September 6, 2005, after almost nine years of delay, and a "last-chance" threat from COAH to dismiss its fair share plan, Fair Lawn finally adopted an overlay zoning ordinance covering the Landmark tract, permitting six units per acre.[3] It was clear from the wording of the ordinance that Fair Lawn was adopting it over protest, in light of what the ordinance recited to be "the Mayor and Borough Council's unswerving position that Daly Field (Block 3610, Lot 2) remain green and undeveloped."
Landmark immediately filed a lawsuit challenging the overlay zoning as allowing inadequate density to satisfy the Borough's fair housing obligation, and sought a builder's remedy. On October 20, 2006, the Law Division found the zoning ordinance invalid. However, the judge declined to entertain the builder's remedy lawsuit at that time, and instead transferred the Fair Housing Act (FHA) portion of the complaint to COAH by order dated January 31, 2007. See Alexander's Dep't Stores v. Paramus, 125 N.J. 100, 116, 592 A.2d 1168 (1991) (addressing the respective jurisdictions of the Law Division and COAH in adjudicating issues relating to fair housing); Sod Farm Assocs. v. Twp. of Springfield, 366 N.J.Super. 116, 123-25, 840 A.2d 885 (App.Div.2004).
Fair Lawn had filed its third round petition on December 19, 2005, and included the Landmark tract as part of its fair share plan in that petition. However, despite the court's order invalidating the overlay zoning for the Landmark site in October 2006, Fair Lawn did not adopt a replacement ordinance.
Moreover, in responses to information requests from COAH, Fair Lawn indicated its intent to file an amended third round plan which would not include the Landmark tract. In her submissions to COAH, Fair Lawn's expert planner did not represent that Fair Lawn had already met its fair share obligations. Rather, as Fair Lawn's counsel conceded to us at oral argument, she outlined an alternative method to meet those obligations in the future, and proposed that those methods be included in an amended plan. On July 3, 2007, Landmark filed a motion with COAH to declare that the Landmark tract must be included in the plan and to order specific zoning relief for the site, or to dismiss Fair Lawn's third round petition.
In its November 7, 2007 decision, COAH reviewed at length the Borough's longstanding failure to adopt the overlay zoning *184 required as a condition of COAH's approval of its second round plan. The agency noted that the Borough had allowed market-rate development on other parcels that were supposed to have been preserved for affordable housing. The agency also rejected the Borough's contention that environmental remediation work on the Landmark tract was evidence that it was no longer appropriate for inclusion in the plan. The agency concluded, in essence, that this was a pretext, since the Borough had never previously cited environmental considerations as a bar to the property's inclusion in its plan.[4] Further, because the Department of Environmental Protection had approved "the remediation plan for the site" and "the actual remediation work [was] being accomplished," the agency reasoned that the Landmark tract was likely to become "available for development."
COAH concluded that Fair Lawn's third round petition no longer provided a realistic opportunity to satisfy Fair Lawn's affordable housing obligation, because it did not even include the overlay zoning required by Fair Lawn's second round plan. See N.J.S.A. 52:27D-311(a). The agency agreed with Landmark that its third round regulations concerning vacant land adjustments, N.J.A.C. 5:94-3.4(a)(1), required that Fair Lawn comply with "all components" of its previously approved plan, including in this case, adoption of the overlay zoning allowing construction of affordable housing on the Landmark tract. Further, COAH concluded that in light of the Borough's history of non-compliance, the purposes of the FHA would be served by dismissing the petition:
In the instant case, ... the Council has concluded that despite its best efforts at obtaining the municipality's compliance with its 11-year old overlay zoning obligation, that this matter has reached a point where continued attempts by COAH to obtain Fair Lawn's long overdue compliance will not accelerate the actual provision of the municipality's affordable housing obligation.

II
At the heart of this appeal is Fair Lawn's contention that COAH failed to conduct a substantive review of the Borough's third round petition. Fair Lawn also contends that COAH should have permitted the Borough to submit an amended petition proposing to meet its fair share requirements without using the Landmark tract, and that COAH should not have ruled on the petition before finally re-adopting its third round fair share rules. See In re Adoption of N.J.A.C. 5:94 & 5:95, 390 N.J.Super. 1, 87-88, 914 A.2d 348 (App.Div.), certif. denied, 192 N.J. 71, 926 A.2d 856 (2007)(affirming in part, and reversing and remanding in part COAH's third round regulations). In that connection, Fair Lawn also contends that COAH should have considered a report prepared by the Borough's expert planner, Cheryl Bergailo. Her report was not part of Fair Lawn's filed third round plan, but it explained how the Borough could amend its third round plan so as to meet its fair share obligations without including the Landmark tract in its plan.[5]
*185 Landmark maintains that the arguments based on third round review are a "red herring" and that COAH properly dismissed the petition because Fair Lawn failed to adopt the overlay zoning which was an essential element of its second round certification. COAH joins in that argument and contends that the Borough's expression of concern over environmental issues on the Landmark tract were of recent vintage and pretextual.
Moreover, Landmark argues that after obtaining more than a decade of protection against a builder's remedy lawsuit by including the Landmark tract in its fair share plan, Fair Lawn improperly sought permission to file an amended third round plan which excluded the Landmark tract. Landmark contends that Fair Lawn could not exclude that tract from the plan unless it proved that the Borough already had enough existing affordable units to satisfy its fair share obligations without the need for the Landmark property. Landmark contends that N.J.A.C. 5:94-3.4(a)(1) required Fair Lawn to provide actual affordable housing, not more promises of future compliance, as a condition of removing Landmark's tract from its fair share plan.
We agree. The Fair Housing Act, N.J.S.A. 52:27D-301 to -329, contemplates the provision of actual affordable housing, not endless promises of future compliance. See Hills Dev. Co. v. Twp. of Bernards, 103 N.J. 1, 43-44, 510 A.2d 621 (1986). The FHA grants a municipality significant discretion in structuring its housing element. See N.J.S.A. 52:27D-311(a); In re Montvale Petition for Substantive Certification, 386 N.J.Super. 119, 133, 899 A.2d 327 (App.Div.2006). But the statute does not require COAH to sanction the playing of "shell games," in which towns include properties in their fair share plans for decades, only to seek their removal from the plans when the developers are close to building the affordable housing.
COAH's regulations recognize that some towns may not have enough currently developable land to meet their fair share requirements, although they may have vacant land that is capable of future development for that purpose. See N.J.A.C. 5:93-4.1; N.J.A.C. 5:93-4.2; N.J.S.A. 52:27D-307(c)(2)(f); Montvale, supra, 386 N.J.Super. at 121-22, 899 A.2d 327. A municipality may receive a "vacant land" adjustment, conditioned on adopting zoning geared at allowing the eventual development of affordable housing on those properties. N.J.A.C. 5:93-4.1, -4.2. However, such designated vacant land must remain in a town's plan:
(a) A municipality may address its first and second round obligation through a vacant land adjustment or include a durational adjustment as provided in N.J.A.C. 5:93 and in compliance with the following:
1. A municipality that received a vacant land or durational adjustment pursuant to N.J.A.C. 5:93-4 or by Court order shall be deemed to have met its 1987-1999 cumulative affordable housing obligation provided it has implemented all of the terms of the substantive certification granted by the Council or the judgment of compliance ordered by the Court. All components of said certification or judgment that are designed to address unmet need pursuant to N.J.A.C. 5:93-4.1(b) shall continue in full force and any affordable housing units created thereunder shall be deemed to be credited toward unmet need until such time as the municipality has provided for its entire unmet need prior to being used to address the growth share obligation.

*186 [N.J.A.C. 5:94-3.4(a)(1) (emphasis added).[6]]
Landmark and COAH urge that this provision requires that the Landmark tract remain part of the Borough's fair share plan at least until the Borough actually satisfies its unmet need. COAH contends that since the Landmark site was included in the Borough's third round plan, as filed with COAH, the agency properly focused on whether Fair Lawn had adopted the overlay zoning necessary to allow the development of affordable housing on the Landmark tract. The agency also contends it was not required to consider a possible amended third round plan that the Borough had never filed.
Our review of the agency's decision is limited to determining whether it is supported by substantial credible evidence and is consistent with applicable law. Shim v. Rutgers, 191 N.J. 374, 384, 924 A.2d 465 (2007); In re Musick, 143 N.J. 206, 216, 670 A.2d 11 (1996); Dore v. Bd. of Educ. of Bedminster, 185 N.J.Super. 447, 453, 449 A.2d 547 (App.Div.1982). COAH has broad discretion to implement its responsibilities under the FHA, including evaluation of municipal proposals to meet fair housing obligations. Alexander's, supra, 125 N.J. at 109-112, 592 A.2d 1168; Van Dalen v. Washington Twp., 120 N.J. 234, 245-46, 576 A.2d 819 (1990). We will defer to the agency's expertise in enforcing its authorizing statute, and its construction of its own regulations, and we will not second-guess the wisdom of the agency's policy decisions. See Shim, supra, 191 N.J. at 384, 924 A.2d 465; In re Taylor, 158 N.J. 644, 657, 731 A.2d 35 (1999).
Judged against those well-established legal principles, we find no basis to disturb COAH's decision to dismiss the third round petition, thus effectively leaving Landmark free to seek a builder's remedy in Superior Court. See N.J.S.A. 52:27D-318; N.J.A.C. 5:95-5.5. The agency's decision was based on sound policy reasons, consistent with the fundamental purpose of the FHA, and on substantial credible evidence of a history of persistent non-compliance with Fair Lawn's second round fair share plan. COAH considered the policy expressed in the FHA to avoid builder's remedy litigation where possible, see N.J.S.A. 52:27D-303, but reasonably concluded that in this case, litigation could not be avoided. The agency properly exercised its authority to dismiss the petition. See Hills Dev. Co. v. Twp. of Bernards, supra, 103 N.J. at 56-57, 510 A.2d 621.
We also find no abuse of discretion in the agency's declining to delay a decision on the third round plan, while the Borough decided whether to submit an amendment proposing to remove the Landmark tract from the plan. Absent convincing proof that a long-included site is no longer appropriate for inclusion, COAH is under no obligation to allow a municipality to remove the site from its fair share plan based only on the town's policy preference to meet its fair share obligation in another way. See Toll Bros., Inc. v. Twp. of W. Windsor, 334 N.J.Super. 77, 103-04, 756 A.2d 1056 (App.Div. 2000), certif. denied, 168 N.J. 295, 773 A.2d 1159 (2001) (discussing "the COAH policy that sites previously zoned for inclusionary development as part of a negotiated settlement in court be retained, N.J.A.C. 5:93-5.13(b)(1)"). *187 We find nothing unreasonable in COAH's construction of its regulation, N.J.A.C. 5:94-3.4(a), as requiring that tracts included as part of a town's vacant land adjustment must remain in the plan until the town actually satisfies the previously-unmet need for affordable housing.[7]
In addressing a challenge to COAH's third round rules, we considered the argument that N.J.A.C. 5:94-3.4(a) "would violate the Mount Laurel[[8]] doctrine if it were construed to allow unmet need to continue despite opportunities to satisfy it." In re Adoption of N.J.A.C. 5:94 & 5:95, supra, 390 N.J.Super. at 85, 914 A.2d 348. We recognized, however, that COAH did not intend "unmet need" to become "`a permanent adjustment to municipal affordable housing obligations.'" Ibid. (quoting 36 N.J.R. 5770 (December 20, 2004)). COAH represented to us that it would carefully scrutinize the third round plans of municipalities that had previously received vacant land adjustments and would require them "to meet their unmet need should redevelopment occur." Id. at 85-86, 914 A.2d 348. We found this a satisfactory response to the challenge:
We cannot assume that COAH will not do what it has promised to do. Indeed, COAH has reviewed the development and redevelopment opportunities in developed municipalities and recalculated the realistic development potential with the ultimate goal of requiring additional affordable housing should land become available. In re Petition for Substantive Certification of Borough of Montvale, 386 N.J.Super. 119, 122, 899 A.2d 327 (App.Div.2006). Accordingly, we conclude N.J.A.C. 5:94-3.4, as presently construed and as administered by COAH, is valid.
[Id. at 86, 914 A.2d 348.]
Here, as the agency promised it would do, COAH has carefully scrutinized Fair Lawn's plan to be sure the vacant land adjustment did not become a hollow promise.
Affirmed.
NOTES
[1] See N.J.A.C. 5:93-4.2(h). "The term `overlay zoning' refers to a situation in which a municipality leaves in place the existing zoning regulations applicable to an area, but superimposes an additional set of requirements." Weeden v. City Council of Trenton, 391 N.J. Super. 214, 225, 917 A.2d 815 (App. Div.), certif. denied, 192 N.J. 73, 926 A.2d 857 (2007). See Terner v. Spyco, Inc., 226 N.J.Super. 532, 544, 545 A.2d 192 (App.Div.1988). The overlay zoning may also provide additional opportunities for development, which will not apply unless the land is developed in accordance with the purpose for which the overlay zoning was adopted. See Milford Mill 128, L.L.C. v. Borough of Milford, 400 N.J.Super. 96, 103, 946 A.2d 75 (App.Div.2008).
[2] COAH's 1996 resolution also put Fair Lawn on notice that "any deviation from the terms and conditions of this certification, which affects Fair Lawn Borough's ability to provide for the realistic opportunity of its fair share of low and moderate income [housing] and which Fair Lawn Borough fails to remedy, may render this certification null and void."
[3] In 2004, Fair Lawn filed an application to extend its second round fair share plan. COAH granted the application on July 27, 2005, conditioned on the Borough adopting the promised overlay zoning for the Landmark tract "within 45 days," failing which the Borough's "second round substantive certification shall automatically expire."
[4] The third round plan proposed to include an additional tract, known as the "Clariant/Third Street" site, located along the Passaic River "at the City of Paterson border." The Borough acknowledged that this site was substantially polluted but claimed it would be cleaned up "within the next several years." However, the Borough claimed that the Landmark tract should be removed from its plan in part because the property was currently undergoing environmental remediation.
[5] Fair Lawn's additional appellate arguments do not warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).
[6] N.J.A.C. 5:93-4.1 and -4.2 were adopted as part of COAH's second round regulations, while N.J.A.C. 5:94-3.4 was part of COAH's third round regulations. The agency adopted revised third round regulations, effective October 20, 2008, which continue the essential language of section 3.4. See N.J.A.C. 5:97-5.3(a).
[7] We do not address a situation, not present here, where COAH finds that a previously-included site is no longer appropriate for continued inclusion because, due to factors beyond the municipality's control, the land is not capable of development within some reasonable future time frame. We also do not address the agency's regulations, N.J.A.C. 5:94-4.17(a) and N.J.A.C. 5:97-6.5(a), concerning sites "zoned for inclusionary development" in order to comply with a town's second round certification. Those sites "shall retain such zoning" under certain defined circumstances. Ibid. We do not understand these more general regulations to in any way narrow the requirements of N.J.A.C. 5:94-3.4 concerning vacant land adjustments.
[8] S. Burlington County NAACP v. Twp. of Mount Laurel, 92 N.J. 158, 456 A.2d 390 (1983) (Mount Laurel II); S. Burlington County NAACP v. Twp. of Mount Laurel, 67 N.J. 151, 336 A.2d 713, appeal dismissed and cert. denied, 423 U.S. 808, 96 S.Ct. 18, 46 L. Ed.2d 28 (1975) (Mount Laurel I).